## WILLIS A. WADE v. MARY C. CROUCH AND R. J. EDWARDS.

(Filed September 3, 1904.)

1. **TAX DEED—Void on Its Face, When.** Where the recital in a tax deed shows a sale to the county, and a deed obtained by virtue of the sale to the county, the deed must contain a recital to show the right of the county to purchase at such tax sale; and unless such deed contains such a recital, it is void on its face.

2. **SAME—Practice.** Where a tax deed is void, it is not necessary for the owner, in an action of ejectment, to tender or pay any of the taxes, interest and penalties for which the property was illegally taxed and sold, and the tax deed issued.

Vol. 14—38

3. **ADVERSE POSSESSION DEFINED.** A possession, to be adverse, must be open, visible, continuous and exclusive, with a claim of ownership, such as will notify parties seeking information upon the subject that the premises are not held in subordination to any title or claim of others, but against all titles and claimants.

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before B. F. Burwell, Trial Judge.*

*Shartel, Keaton & Wells,* for plaintiff in error.

*J. B. Robertson,* for defendant in error Mary C. Crouch.

Opinion of the court by

HAINER, J.: This was an action of ejectment brought in the district court of Oklahoma county by Mary C. Crouch against Willis A. Wade, and others, to recover possession of a lot in South Oklahoma addition to Oklahoma City. Judgment for plaintiff for recovery of the possession of the real estate in controversy, from which judgment the plaintiff in error, Willis A. Wade, appeals.

The plaintiff, in her petition, alleged that she was the legal and equitable owner of the real estate in controversy, and that the defendants Wade and Overholser unlawfully kept her out of the possession of the same.

The defendant Wade answered by way of a general denial, and claimed title under a tax deed.

It appears from the record that the lot in controversy was finally awarded to George W. Coffman, on March 9, 1896, and a deed was issued to him on said date by the town-site trustees, acting for and on behalf of the government of the United States. That on September 24, 1896, Coffman deeded said lot to the defendant in error, Mary C. Crouch,

by general warranty deed.   That the lot which was the sub-
ject of the controversy was assessed for the taxes of the
years 1892, 1893, 1894 and 1895; and that on April 17, 1897,
the county treasurer of Oklahoma county executed a tax
deed to one W. H. Ebey for said lot, for the taxes assessed
and charged against said property for the year 1892, and
sold by the county treasurer on September 4, 1893.   It fur-
ther appears that on June 27, 1897, W. H. Ebey and wife
deeded said lot to Levi Overholser, one of the defendants
herein.   On March 9, 1900, Levi Overholser conveyed said
property, by quit-claim deed, to Willis A. Wade, the plaintiff
in error.

The title to the lot in controversy did not pass from the
United States to George W. Coffman, the rightful claimant,
until March 9, 1896, and hence the property was not subject
to taxation until said date.   (*Bockfinger v. Foster,* 10 Okla.
488; *Security Company v. McPherson,* 7 Okla. 332; *McDaid
v. Oklahoma,* 150 U. S. 209).

The tax deed shows on its face that the lot in question
was purchased at public auction by the county treasurer,
for the amount of the taxes, interest, penalties and costs
then due and remaining unpaid.   There is nothing in the
deed that shows, or tends to show, that the land could not
have been sold to some other party for the same price, pro-
vided the treasurer had not made his bid or offer.   In *Han-
enkratt v. Hamil,* 10 Okla. 219, the court, in passing upon
this identical question, said:

"We take the law to be well settled that where the re-
citals in the tax deed show a sale to the county, and a deed
obtained by virtue of a sale to the county, that the deed
must contain recitals to show the right of the county to pur-

chase at such tax sales; that if the recitals of the tax deed show the county to be a competitive bidder at said tax sale, such recitals render the tax deed void."

It follows that the tax deed issued by the treasurer of Oklahoma county to Ebey was void.

The land not being subject to taxation, and the deed being absolutely void, it was not necessary for the plaintiff to tender or offer to pay any of the taxes, interest or penalties for which the land was sold, and the tax deed issued. (*Frazier v. Price*, 8 Okla. 253; *Morrow v. Smith*, 8 Okla. 267).

But it is contended by plaintiff in error that the deed from Coffman to Mary C. Crouch was void, for the reason that the undisputed evidence shows that the defendant Wade was holding adverse possession of the premises involved, at the time the property was conveyed from Coffman to Mary C. Crouch. We cannot concur in this view. It is true that the evidence shows that Wade was residing on the lot in question at the time the conveyance was made, but it does not disclose that at that time he was in possession under any claim of right, or under color of title. On the contrary, the evidence discloses that Wade was in possession of the lot at that time by permission of Overholser, and that he did not receive the quit-claim deed from Overholser to the property in question until a long time thereafter, to wit, on March 19, 1900, and did not claim said property until that time.

For adverse possession to be effective, it must not only be hostile to the title of the true owner, but in addition thereto, it must be either under a claim of right, or under some color of title. Mere naked possession or occupancy

of the premises, no matter how long, without a claim of right or color of title, cannot ripen into a good title, but must always be regarded as being an occupancy for the use and benefit of the true owner. To constitute the basis of an adverse possession, the entry upon the property must be accompanied by a claim of right. In Am. & Eng. Enc. Law, vol. 1, (2nd. Ed.,) page 789, the rule is thus stated:

"It is an actual, visible, and exclusive appropriation of land, commenced and continued under a claim of right, with the intent to assert such claim against the true owner, and accompanied by such an invasion of the rights of the opposite party as to give him a cause of action."

And again, on page 795 of the same volume, it is said:

"There are five essential elements necessary to constitute an effective adverse possession: First, the possession must be hostile and under a claim of right; second, it must be actual; third, it must be open and notorious; fourth, it must be exclusive; and fifth, it must be continuous. If any of these constituents is wanting, the possession will not effect a bar of the legal title."

In *Sharon v. Tucker,* 144 U. S., 533, the supreme court of the United States has laid down the following rule:

"A possession, to be adverse, must be open, visible, continuous and exclusive, with a claim of ownership, such as will notify parties seeking information upon the subject that the premises are not held in subordination to any title or claim of others, but against all titles and claimants."

Measured by this rule, which is unquestionably the true doctrine, the evidence wholly fails to show that the plaintiff in error was in the adverse possession of the property in question at the time the conveyance was made from Coffman to Mary C. Crouch, and at the time this action was brought. The doctrine announced in *Galbraith v. Paine,* 96 N. W.

258, has, therefore, no application to the facts of this case.

No error appearing in the record, the judgment of the court below is affirmed.

Burwell, J., who presided in the court below, not sitting; all the other Justices concurring.