**STEWART v. BURROWS et al.**

No. 10555—Opinion Filed June 1, 1920.

Rehearing Denied Dec. 14, 1920.

(Syllabus by the Court.)

1. **Indians—Lands—Removal of Restrictions —Statutes.**

Act of Cong. May 27, 1908, c. 199, 35 Stat. 312, entitled "An Act for the removal of restrictions from part of the lands of allottees of the Five Civilized Tribes, and for other purposes," is a revising act, and was intended as a substitute for all former acts relating to the subject of such restrictions, and operated to repeal the provisions of Act of Cong. April 26, 1906, c. 1878, 34 Stat. 137, and previous congressional enactments in conflict therewith on the same subject.

2. **Taxation—Property Subject—Indian Inherited Land.**

Lands inherited by a half-blood Choctaw Indian minor from a half-blood Choctaw allottee are not restricted lands within the purview of the proviso of section 6 of the act of Congress of May 27, 1908, and are subject to taxation under and by virtue of section 4 of said act.

3. **Taxation—Action to Set Aside Tax Deed —Condition Precedent.**

In an action to set aside a tax deed, it is not error for the court to require the plaintiff to pay, for the use and benefit of the holder of a tax deed, all costs, penalties, and interest which the party seeking to redeem would be bound to pay if he were redeeming the land from tax sale as provided in section 7417, Revised Laws 1910.

Error from District Court, Johnston County; J. H. Linebaugh, Judge.

Action by J. W. Stewart against C. B. Burrows and V. F. Eubank, County Treasurer of Johnston County to cancel certain tax deeds and to have taxes declared illegal. Judgment for plaintiff for less than sued for, and he brings error. Affirmed.

J. E. Whitehead, for plaintiff in error.

John J. Stobaugh and Toney & Looney, for defendants in error.

McNEILL, J. This action was commenced in the district court of Johnston county by J. W. Stewart to cancel certain tax deeds issued to C. B. Burrows and to have certain taxes against the lands declared illegal. From a judgment in favor of the plaintiff cancelling said tax deed and from a judgment of the court that the taxes on said land were legal, and a proper charge against said land. and requiring the plaintiff to pay the taxes to the holder of the tax deed amounting to $300, the plaintiff has appealed. The lands involved herein constituted the surplus allotment of William B. Anderson. a half-blood Choctaw Indian, who died in February. 1904, and left surviving him three adult children, half blood Choctaw Indians, and a grandson. Jimmie Thomas, a half-blood minor. who reached his majority July 31, 1913, and each inherited a one-fourth interest in said allotment.

Plaintiff in error in his brief alleged that William B. Anderson was a full-blood Choc-

taw, but the enrollment record discloses that he was only a half-blood.

The portion of the land belonging to Jimmie Thomas was sold, after reaching his majority, and through different conveyances is now owned by J. W. Stewart, who through different conveyances became the owner of the other heirs' portion of the land. The land was assessed for taxes, and it is alleged that the taxes for the years 1908 to 1913, inclusive, were illegal and void, and that a tax deed which had been issued by the county treasurer to O. B. Burrows was void. It is contended by the plaintiff in error that the one-fourth interest in the land inherited by Jimmie Thomas was restricted land and not subject to taxation. Jimmie Thomas being a minor, the determination of whether the portion of the land inherited by him was restricted land or subject to taxation during his minority, will depend upon the construction to be placed upon the act of Congress of May 27, 1908. This court, in the case of Chupco v. Chapman, 76 Okla. 201, 170 Pac. 259, stated as follows:

"Act of Cong. May 27, 1908, c. 199, 35 Stat. 312, entitled 'An act for the removal of restrictions from part of the lands of allottees of the Five Civilized Tribes, and for other purposes,' is a revising act, and was intended as a substitute for all former acts relating to the subject of such restrictions, and operated to repeal the provisions of Act Cong. April 26, 1906, c. 1876, 34 Stat. 137, and previous congressional enactments in conflict therewith on the same subject."

If we look to the act of May 27, 1908,— and it is agreed by all parties that said Act is the one applicable to the case at bar—we find this identical question has been decided by the federal court of the Eastern division of Oklahoma in the case of United States v. Shock, 187 Fed. 870, the court stating as follows:

"For the reasons given in the opinion above referred to, the question as to whether, on March 1, 1909, the lands referred to by the demurrer were taxable, depends upon whether they were alienable without restriction. By section 19 of the act of April 26, 1906, c. 1876, 34 Stat. 144, all lands from which restrictions were removed were made subject to taxation. By the same act, section 22, the adult heirs of any deceased Indian of either of the Five Civilized Tribes, were permitted to sell lands inherited from such decedent. Full-blood heirs were permitted to sell with the approval of the Secretary of the Interior. This amounted to a removal of restrictions from land inherited by adult and minor heirs, less than full blood, and such lands thereby became taxable without regard to the degree of blood of the Indian ancestor. Section 4 of the act of May 27, 1908, c. 199, 35 Stat. 313, again provided: 'That all lands from which restrictions have been or shall be removed, shall be subject to taxation and all other civil burdens, as though it were the property of other persons than allottees of the Five Civilized Tribes.' "

The court further stated as follows:

"It follows that the interests of all full bloods in inherited lands owned by them on March 1, 1909, were not taxable; that the homesteads of deceased allottees of half or more Indian blood, leaving surviving them a child or children born since March 4, 1906, still living on March 1, 1909, were not taxable, unless prior thereto the Secretary of the Interior had removed restrictions therefrom. All other interests in full-blood inherited lands on March 1, 1909, were taxable."

This court has not passed upon the identical question, but an examination of the act of May 27, 1908, and the construction that has been placed upon the same by this court in other cases, convince us that the case of United States v. Shock, supra, is correct. Section 1 of the act of May 27, 1908, in dealing with what lands are restricted, deals with the lands of the allottees where the allottee is living. The lands involved in this case do not come within any of the subdivisions mentioned in section 1 as being restricted lands. Section 9 of the act deals exclusively with inherited lands, and provides as follows:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of such allottee's lands."

Said section then contains two provisos. The first proviso deals with inherited lands which have descended to full-blood Indian heirs. The grantee in this case not being a full-blood Indian heir, his land was not controlled by said proviso. The second proviso deals with inherited lands of members of the tribe of one-half or more Indian blood who left issue born since March 4, 1906, and deals with the homestead. The record does not disclose, nor is there any contention made, that the allottee left issue born since March 4, 1906, and therefore this land does not come within the lands contained in said proviso. If this land is restricted, it must be by virtue of some other section of the act. Plaintiff in error contends that it is restricted by virtue of section 6 of said act, but such contention is contrary to the holding of this court where this court has held that the lands inherited even by full-blood minors are not restricted lands within the purview of the proviso of section 6. Such was the holding in the case of Chupco v. Chapman, supra, King v. Mitchell, 69 Oklahoma, 171 Pac. 725, and King v. Schults, 72 Oklahoma, 180 Pac. 550; also in Seiffert v. Jones, 77 Okla. 204, 187 Pac. 223, where the court stated as follows:

"This court has passed upon this question contrary to the contention of the defendant in error in the case of Chupco v. Chapman, 76 Okla. 201, 170 Pac. 259: 'Lands inherited by full-blood Creek Indian minors from a full-blood Creek allottee are not "restricted lands" within the purview of the proviso in section 6 of the act of Congress of May 27, 1908, prohibiting the sale of incumbrance of restricted lands of living minors, except by leases authorized by law, by order of the court or otherwise.' "

Following this line of decisions, the land was not restricted within the proviso of section 6 of the act of May 27, 1908.

The question of whether the three-fourths interest in the land which plaintiff in error purchased from the adult heirs is taxable is not briefed separately, but from the holding that the minor's interest was taxable it follows that the adults' land was also taxable.

The plaintiff next contends that the court erred in requiring the plaintiff to pay $300 which the court found to be the taxes and penalty legally due upon said land and ordered paid to C. B. Burrows, the holder of the tax deed, who had paid the same. In this we do not think the court committed error. The court followed section 7417, Rev. Laws 1910, which provides as follows:

" * * * And must when his action to set aside the tax deed is brought, or a defense to a recovery of possession is plead, tender in open court for the use of the holder of the tax deed, all taxes, penalties, interests and costs, which the party seeking to redeem would be bound to pay if he was redeeming the land from tax sale, and on failure so to do, his action or defense, as the case may be, shall be dismissed."

The plaintiff in error in his petition asked for equitable relief and certainly cannot now complain if the court required him to do equity before granting him equitable relief, to wit, to pay the taxes legally due upon his own land to the party who had paid them for him. If we apply section 6005 of the statutes, the defendant is not entitled to a reversal, for he has not been prejudiced by this order. nor has he been deprived of a constitutional or statutory right, but simply has been required as a matter of justice to pay what he legally owes by a court of equity. While this court, in the cases of Wade v. Crouch, 14 Okla. 593, 78 Pac. 91, Davenport v. Doyle, 57 Okla. 341, 157 Pac. 110, Frasier v. Prince, 8 Okla. 253, 58 Pac. 751, and Morrow v. Smith, 8 Okla. 267, 61 Pac. 366, held, in substance, that where a tax deed is void, it is not necessary for the owner of the land to tender the amount of taxes, interest, and penalty into court as a condition precedent to maintaining suit, yet this court has never reversed an equity case where the trial court had required the plaintiff to make such a payment when the same was a legal and just tax against the land. We think the above line of cases is easily distinguishable from this case. We therefore think the error complained of is without merit.

For the reasons stated, the judgment of the trial court is affirmed.

RAINEY, C. J., HARRISON, V. C. J., and KANE, PITCHFORD, and JOHNSON, JJ, concur.